UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| **PHYLLIS J. HERNANDEZ,** | ) |
| | ) |
| **Plaintiff,** | ) |
| v. | ) |
| | ) Case No. 08-2275 |
| **MICHAEL J. ASTRUE,** | ) |
| **COMMISSIONER OF SOCIAL SECURITY,** | ) |
| | ) |
| **Defendant.** | ) |

# ORDER

In January 2008, Administrative Law Judge (hereinafter "ALJ") James Gildea denied Plaintiff Phyliss Hernandez's application for disability insurance benefits. ALJ Gildea based his decision on a finding that Plaintiff was able to perform her past jobs or other jobs that exist in significant numbers in the national economy.

In November 2008, Plaintiff filed a Complaint For Judicial Review (#3) against Defendant Michael Astrue, the Commissioner of Social Security, seeking judicial review of the ALJ's decision to deny social security benefits. In April 2009, Plaintiff filed a Motion for Summary Judgment or Remand (#11). In June 2009, Defendant filed a Motion for an Order Which Affirms the Commissioner's Decision (#14). In August 2009, Plaintiff filed a Reply to Defendant's Memorandum in Support of Motion for Summary Affirmance (#16). After reviewing the administrative record and the parties' memoranda, this Court **DENIES** Plaintiff's Motion for Summary Judgment or Remand **(#11)**.

## I. Background

In March 2007, Plaintiff filed an application for social security benefits alleging disability beginning February 15, 2005. (R. 61.) The Social Security Administration denied her application initially and on reconsideration. At Plaintiff's request, the ALJ held a video hearing in January 2008. An attorney represented Plaintiff at the hearing. Plaintiff and Thomas Dunleavy, a vocational expert (hereinafter "VE"), testified at the hearing. In January 2008, the ALJ issued a decision denying Plaintiff benefits on the basis that Plaintiff could perform her past

relevant work, or, alternatively, she could perform a significant number of jobs in the economy and, therefore, was not disabled.  In September 2008, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  In November 2008, Plaintiff appealed this decision by filing a complaint with this Court pursuant to 42 U.S.C. § 405(g).  Plaintiff seeks a reversal of this decision.  In the alternative, she asks the Court to remand the case for reconsideration.

The parties have consented to the exercise of federal jurisdiction by a United States Magistrate Judge.

Plaintiff testified at the hearing that she last worked in 2003 for a temporary agency for three months.  (R. 389-90.)  The longest she has worked in the past fifteen years was as a certified nurse's assistant for five months.  (R. 390.)

At the time of the hearing, Plaintiff weighed 327 pounds and was 5'6" tall.  (R. 388.)  Plaintiff testified that she has diabetes and currently takes diabetes medication, although she has never taken insulin.  (R. 390.)  She also takes medication for high blood pressure and high cholesterol.  (R. 390.)  Her psoriasis flares up when the weather changes, and she treats it with a prescription cream.  (R. 390, 393.)  Plaintiff testified that she uses Albuterol twice a week and Proventil four times a day for asthma.  (R. 391.)  She was hospitalized once, in November 2006, for an asthma-related breathing problem.  (R. 391.)  She also testified that she has problems with nerves and numbness in her feet and legs.  (R. 394.)  She takes Lyrica daily for her nerves, and she testified that it helped at first but no longer does.  (R. 394-95.)  Plaintiff also testified that she has arthritis in her back, knees, and elbows.  (R. 395.)  She had previously taken Flexeril and Tylenol Arthritis to treat her arthritis.  (R. 395.)

Plaintiff testified that she has trouble sleeping at night due to pain, and she must get up and sit.  (R. 396.)  She generally catnaps during the day.  (R. 396.)  She gets up between five a.m. and noon each day and spends six hours each day watching television and up to five hours (spread out over the course of a day) doing household activities, such as sweeping the floor or

washing dishes (R. 396-97.) She does some cooking, but her husband does most of it. (R. 396-97.) Plaintiff separates the clothes for laundry, and her husband washes the clothes. (R. 397.) She and her husband share grocery shopping responsibilities, and she drives. (R. 397.) Plaintiff testified that it takes her a while to do housework. For example, sweeping the kitchen floor takes her half an hour because she has to sit before she finishes one area. (R. 397.) Plaintiff used to crochet but can no longer do it because her right hand has not functioned well since she had surgery on her right thumb and forefinger. (R. 398.) Her husband helps her bathe because it is hard for her to get into the tub on her own. (R. 400.) Plaintiff can lift ten pounds at a time, walk less than a block before needing to rest, sit for an hour at a time, and stand in one position for two minutes before needing to sit down. (R. 399.) She testified that she uses a cane that she obtained from her sister to walk. (R. 400.)

The ALJ found that Plaintiff had the following severe impairments: diabetes mellitus, high blood pressure, asthma, chronic low back pain, and psoriasis. (R. 13.) He stated that the record contained no evidence to support a finding that Plaintiff's reported hand or joint pain related to arthritis has more than a minimal effect on her ability to perform work activity. (R. 13.)

The ALJ found that Plaintiff has the residual functional capacity (hereinafter "RFC") to perform light work with the following restrictions: no climbing ladders, ropes, or scaffolds; no more than occasional balancing, stooping, kneeling, crouching, or crawling; and no concentrated exposure to fumes, odors, dusts, gases, or poor ventilation. (R. 15.) The ALJ also found that Plaintiff's testimony about the intensity, persistence, and limiting effects of her symptoms was not entirely credible. (R. 18.)

## II. Standard of Review

In reviewing an ALJ's decision, this Court does not try the case de novo or replace the ALJ's finding with the Court's own assessment of the evidence. *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989). The findings of the Commissioner as to any fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, the question before the Court is

not whether a plaintiff is, in fact, disabled, but whether the evidence substantially supports the ALJ's findings. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995). The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether a plaintiff is disabled, the Court must affirm the ALJ's decision denying benefits. *Books v. Chater*, 91 F.3d 972, 977-98 (7th Cir. 1996).

The Court gives considerable deference to the ALJ's credibility finding and will not overturn it unless the plaintiff can show that those findings are patently wrong. *Urban v. Sullivan*, 799 F. Supp. 908, 911 (C.D. Ill. 1992).

### III. Discussion

Plaintiff argues that the ALJ erred by (1) improperly determining Plaintiff's RFC; (2) improperly assessing Plaintiff's credibility; and (3) providing incomplete hypothetical questions to the VE and wrongly finding Plaintiff able to perform her past and other work.

Plaintiff also contends in her RFC argument that the ALJ erred by failing to note obesity as a severe impairment, which Plaintiff contends is harmful error. The Court notes that *Young v. Barnhart*, which Plaintiff cited in favor of this contention, in fact does not support her argument that the ALJ erred by failing to note obesity as a severe impairment. *See Young v. Barnhart*, 282 F. Supp. 2d 890, 895 n.3 (N.D. Ill. 2003). While *Young* does indeed state that SSR 02-1p's provisions remind ALJs to consider the effect of obesity on other impairments, it does not hold that failure to include obesity as a severe impairment constitutes harmful error. *See id.* Furthermore, the Seventh Circuit court has stated that "step two is a threshold analysis that requires [a claimant] to show only that he has one severe impairment." *Bradley v. Barnhart*, 175 F. App'x 87, 90 (7th Cir. 2006). When an ALJ fails to label an impairment as severe, but has proceeded beyond Step Two of the five-step analysis, he has not committed reversible error. *See Curtis v. Astrue*, 623 F. Supp. 2d 957, 968 (S.D. Ind. 2009). Here, the ALJ found that Plaintiff has severe impairments including diabetes mellitus, high blood pressure, asthma,

chronic low back pain, and psoriasis. (R. 13.) Accordingly, the Court concludes that the ALJ did not err at Step Two when he failed to label Plaintiff's obesity as a severe impairment.

### A. RFC Assessment

Plaintiff argues that the ALJ erroneously found Plaintiff capable of light work. Specifically, Plaintiff contends that the ALJ failed to consider Plaintiff's obesity and how it compounded her back and knee problems; ignored evidence of depression, anxiety, and panic attacks in the record; failed to account for limitations due to Plaintiff's right hand and arm problems and side effects from Plaintiff's medication; erred by stating that there was no objective testing to support Plaintiff's arthritis and failed to incorporate limitations from arthritis; failed to account for Plaintiff's chronic lower back pain or to build an accurate bridge between the evidence that Plaintiff suffered from chronic lower back pain and his finding that Plaintiff was capable of light work; and failed to properly consider the effect of her combination of impairments. Plaintiff also contends that the ALJ failed to make a function-by-function RFC assessment as required by SSR 98-6p and did not determine Plaintiff's skill level in the RFC, as required by SSR 82-41 and SSR 96-8p.

Defendant responds that the ALJ's RFC assessment is supported by substantial evidence, including objective medical evidence, the opinions of state agency medical consultants, and Plaintiff's activities. The ALJ considered Plaintiff's limitations due to her chronic lower back pain and, as a result, limited her to a reduced range of light work with postural limitations. The ALJ also considered the medical opinions of record in assessing Plaintiff's RFC including the opinions of the two state agency evaluators, Dr. Henry Rohs, who found Plaintiff able to perform work with certain exertional and postural limitations, and Dr. Sandra Bilinsky, who found Plaintiff able to perform medium work with exertional limitations and no postural limitations. Defendant notes that these state agency physicians' findings are inconsistent with Plaintiff's claim of complete disability and furthermore, the ALJ restricted Plaintiff to light work with postural and environmental limitations because he found that the state agency evaluators did not have access to additional medical evidence and Plaintiff's testimony.

5

Defendant notes that, although Plaintiff contends that the ALJ failed to properly consider her combination of impairments including back disorder, hand limitations, obesity, arthritis of her knees and elbows, depression, anxiety, and panic attacks, Plaintiff does not cite to evidence that supports the degree of limitation she claims.

Defendant states that the ALJ did consider medical evidence relating to Plaintiff's back pain, right finger pain, obesity, and arthritis when assessing Plaintiff's RFC. The ALJ did consider Plaintiff's problems with her finger and thumb. However, Defendant states that the medical evidence does not show that Plaintiff continued to have thumb and finger problems after her surgery to resolve the problem. Defendant contends that the ALJ explicitly considered Plaintiff's history of obesity; furthermore, the state agency physicians were aware of Plaintiff's weight in their review of the record evidence, and the ALJ considered the stage agency physicians' reports. The ALJ also considered Dr. Sunkavallay's report indicating that Plaintiff had obesity and back problems and accordingly, limited her to light work with postural limitations. The ALJ also considered Plaintiff's complaints of rheumatoid arthritis and diagnosis of osteoarthritis by physician's assistant George Oliver. Nevertheless, based on Mr. Oliver's findings that Plaintiff has no joint deformity and good range of motion, the ALJ reasonably found that, even if Plaintiff had arthritis, it would not affect her ability to work.

Defendant contends that the ALJ reasonably excluded Plaintiff's reported mental limitations, arm and hand weakness, and medication side effects from the RFC. The record contains no evidence of significant treatment with a mental health specialist and no medical evidence indicating limitations from mental conditions. Plaintiff only reported side effects on one occasion on January 24, 2007, and she stopped receiving that medication after reporting her side effects. Therefore, the ALJ did not err by finding that those side effects did not limit Plaintiff. Although Plaintiff argues that she has arm and hand weakness, she did not raise this issue during her most recent examination on record, her September 2007 examination by Dr. Srinivas Sunkavally. Thus, Defendant argues, Plaintiff has not established that she continued to experience problems in her arm and hand throughout the relevant period.

6

The Court agrees with Defendant that substantial evidence supported the ALJ's RFC assessment. The ALJ considered the state agency physicians' reports that supported a finding of medium work, and then further limited Plaintiff to light work with postural and environmental limitations based on additional medical evidence and Plaintiff's testimony, information that was not available to the state evaluators. (R. 19.)

Plaintiff is correct that the ALJ must consider the combined effect of claimant's impairments in determining her RFC: "The regulations require the agency to consider the combined effect of all of the claimant's ailments, regardless of whether 'any such impairment, if considered separately, would be of sufficient severity.'" *See Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000) (quoting 20 C.F.R. § 404.1523). Here, the ALJ properly considered the limiting effect of Plaintiff's combination of impairments when he assessed Plaintiff's RFC, specifically the effect of Plaintiff's obesity on her back and knee problems. He explicitly noted that Plaintiff has a history of obesity. (R. 17.) In addition, when determining Plaintiff's RFC, the ALJ considered the opinions of Dr. Sunkavally and the state evaluator (R. 230, 381), both of whom stated that Plaintiff was obese. (R. 17, 19.) As a result of his reliance on these doctors' opinions, the ALJ factored obesity into his RFC determination. *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) ("[A]lthough the ALJ did not explicitly consider Skarbek's obesity, it was factored indirectly into the ALJ's decision as part of the doctors' opinions.").

Furthermore, the ALJ is limited to considering the evidence in the record. 20 C.F.R. § 404.1512(a) (stating that an ALJ need only consider impairments a claimant says he has, or about which the ALJ *receives evidence*). Plaintiff apparently relies on Dr. Sunkavally's opinion to support her argument that the ALJ did not adequately consider obesity, stating that, "Plaintiff's pain and musculoskeletal condition is most certainly aggravated by her obesity, as noted by Dr. Sunkavally's objective findings." (#12, p. 12.) However, Dr. Sunkavally's clinic notes do not state that Plaintiff's obesity aggravated her other medical conditions; instead, he noted that Plaintiff was "mildly obese" and separately stated that Plaintiff experienced back pain and musculoskeletal discomfort and pain. (R. 381.) Thus, Plaintiff has not cited any evidence in the record regarding any effects Plaintiff's obesity had on her medical conditions. Absent any

7

discussion or opinions by medical sources regarding the effects of Plaintiff's obesity, the ALJ cannot be criticized for not articulating the effects of obesity on Plaintiff's ability to work. *See Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.").

Plaintiff next argues that the ALJ erred because he ignored notations of depression, anxiety, and panic attacks in the record; failed to incorporate limitations due to Plaintiff's right hand and arm problems, her chronic lower back pain, and the side effects of her medication; and erred by stating that there was no objective testing to support Plaintiff's arthritis and failed to incorporate limitations from arthritis. However, Plaintiff has not shown that any of these problems preclude her from working. It is not enough for a plaintiff to show that an impairment exists; she must show that the impairment is severe enough to preclude her from engaging in substantial gainful activity. *See Anderson v. Sullivan*, 925 F.2d 220, 222 (7th Cir. 1991) (stating that mere diagnosis of nervousness did not prove disability); *Felver v. Barnhart*, 243 F. Supp. 2d 895, 903 (N.D. Ind. 2003); *see also* 42 U.S.C. §§ 416(i), 423(d)(3) (2006). Plaintiff's citations to the record suggest that she has suffered from depression (R. 173-75, 178, 358-60, 385), but Plaintiff has provided no evidence that her mental condition limited her ability to work. She claims that the record has not established that she regained full use of her right thumb and finger after surgery (#12, p. 10; R. 376-77). However, Plaintiff bears the burden of providing medical evidence that supports her purported limitations. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). Here, she did not provide evidence showing that her right thumb and finger impairments limit her ability to work. Plaintiff contends that she experiences other problems with her right arm, including a shoulder cyst, elbow pain, weak tricep, and grip problems, that complicate her ability to use her right arm. (#12, p. 10; R. 180, 256-57, 358-60.) Similar to Plaintiff's thumb and finger problems, Plaintiff has not shown that these right arm problems limit her ability to work. Regarding side effects from medication, Plaintiff cites to no evidence from the medical record to support her contention that she has limitations due to side effects. If anything, it appears that Plaintiff only experienced side effects on one occasion in January 2007 and her doctors discontinued the problematic medication. (R. 173.)

Next, Plaintiff contends that the ALJ "failed to include anything in the RFC acknowledging [Plaintiff's chronic lower back] pain, finding her capable of light work inexplicably, which is particular harmful in light of Dr. Sunkavally's findings and Plaintiff's osteoarthritis and obesity." (#12, p. 11.) However, the decision shows that the ALJ considered Plaintiff's complaints of back pain, including the information in Dr. Sunkavally's clinic notes. (R. 17.) The ALJ explicitly noted that Dr. Sunkavally's report stated that Plaintiff's rated her pain as 3-5 out of 10, depending on her activity level. (R. 17, 381.) Therefore, the ALJ considered the evidence relating to Plaintiff's back pain and made a determination of the effect of that pain on her ability to work, based in part on Dr. Sunkavally's report. The Seventh Circuit reminds us that where reasonable minds could differ as to whether a plaintiff is disabled, the Court must accept the ALJ's determination on the evidence. *See Books*, 91 F.3d at 977-98.

Plaintiff also contends that the ALJ did not build a logical bridge between his finding of light work and Dr. Sunkavally's findings regarding Plaintiff's chronic lower back pain, stating as follows: "Dr. Sunkavally's findings do not support a finding of light work, and neither the Defendant nor the ALJ can adequately explain how the ALJ made such a finding based on Dr. Sunkavally's findings." (#16, p. 2.) The Court disagrees; the ALJ expressly discussed Dr. Sunkavally's findings and noted that Plaintiff reported her pain level to be 3-5 out of 10. (R. 17.)

Regarding Plaintiff's contention that the ALJ erred by stating that no objective evidence supported Plaintiff's claims of arthritis and by excluding limiting effects from Plaintiff's arthritis. Plaintiff specifically contends that the record shows that her treating doctors noted arthritis of the back, knees, and elbows. (#12, p. 11.) Plaintiff cites to physician's assistant George Oliver's report that diagnoses Plaintiff with osteoarthritis of the knee, shoulder, and hip (R. 174); progress notes that report Plaintiff's elbow crepitus pain (R. 180); Plaintiff's self-reported medical history of arthritis/rheumatism (R. 189); and Plaintiff's self-reported medical history of rheumatoid arthritis and treatment with Tylenol (R. 358-60).

9

The ALJ stated that "[a]lthough the claimant reported at the time of assessment for health services on May 4, 2007 that she had rheumatoid arthritis, there is no objective testing evident that documents the diagnosis." (R. 13.) The ALJ correctly observed that the record includes no objective testing documenting a diagnosis of rheumatoid arthritis because the record shows only a self-reported history and treatment with Tylenol. (R. 358-60.) The ALJ considered Mr. Oliver's report and diagnosis of osteoarthritis and found that the examination showed no joint deformity, good range of motion, and point tenderness in lower back and shoulder. (R. 13.) The ALJ therefore considered the evidence in the record of arthritis, and substantial evidence supports his finding that Plaintiff's reported hand or joint pain related to arthritis has no more than a minimal effect on her ability to work. (R. 13.) Moreover, Plaintiff has not directed the Court to any evidence in the record to show that her arthritis limited her ability to work.

Plaintiff's final arguments also fail. Plaintiff contends that the ALJ did not make a function-by-function analysis, as required by SSR 98-6p, because he did not account for Plaintiff's severe impairments and ignored Plaintiff's combination of impairments. (#12, p. 10.) Under SSR 96-8p, a narrative discussion of claimant's symptoms and medical source opinions is sufficient for the function-by-function assessment, and the ALJ need not include conditions or impairments that the ALJ found neither credible nor supported by the record. *See Knox v. Astrue*, 327 F. App'x 652, 657 (7th Cir. 2009). As discussed above, the ALJ adequately accounted for Plaintiff's severe impairments and combination of impairments in determining her RFC. The ALJ discussed Plaintiff's symptoms and the medical evidence, and discounted Plaintiff's alleged symptoms based in part on Plaintiff's credibility. Thus, the ALJ conducted a proper function-by-function assessment. Plaintiff also asserts that the ALJ did not determine Plaintiff's skill level when determining her RFC, as required by SSR 82-41 and SSR 96-8p. She did not develop this argument and the Court need not consider it.

### B. Credibility

The ALJ found that "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but . . . the claimant's statements

concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. 18.)

Plaintiff argues that the ALJ erroneously assessed Plaintiff's credibility because he based his assessment on "his lay review of the objective evidence and [he] misconstrue[d] Plaintiff's testimony." (#12, p. 13.) Plaintiff specifically contends that the ALJ focused on Plaintiff's testimony that she spends five hours on household activities each day and ignored Plaintiff's testimony that shows her limitations, including that she has trouble sleeping, uses a cane to walk, and can only do household activities for brief periods before resting, lift ten pounds, walk less than a block before stopping, and stand for two minutes. Plaintiff also asserts that the ALJ failed to consider all of Plaintiff's impairments and her medication side effects, and failed to consider Plaintiff's indigency, as required by SSR 96-7p.

Defendant responds that the ALJ reasonably discounted Plaintiff's subjective allegations of complete disability based on objective medical evidence and medical opinions, as well as Plaintiff's activities of watching TV for six hours per day, doing housework for five hours a day, grocery shopping, and driving. Defendant also states that the evidence does not show that Plaintiff failed to seek medical treatment due to indigency.

An ALJ is not obliged to believe all of a claimant's testimony. *Johnson v. Barnhart*, 449 F.3d 804, 805 (7th Cir. 2006). The Seventh Circuit has outlined an extremely deferential standard of review regarding credibility; a court will reverse the ALJ's findings on credibility only when they are patently wrong. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). A court should conclude that a credibility determination is patently wrong only when it "lacks any explanation or support." *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008). Here, the ALJ explained how he determined Plaintiff's credibility based on the evidence, and he did not mischaracterize the evidence. The ALJ considered that Plaintiff testified that she spends around five hours each day on household activities (R. 18, 397) and also noted that Plaintiff did not bring her cane with her to the hearing and that it had not been prescribed. (R. 18.) As far as Plaintiff's argument that ALJ did not properly consider Plaintiff's medication side effects or

combination of impairments, this Court has already decided that the ALJ adequately addressed those issues. Finally, Plaintiff's argument about indigency is unpersuasive because she failed to explain how Plaintiff's indigency is significant in this case.

The ALJ articulated his reasons for finding that Plaintiff's claim of total impairment was not entirely credible. In light of the deferential standard for assessing credibility, the Court cannot conclude that this credibility determination was patently wrong.

### C. Steps Four and Five

Plaintiff argues that the ALJ's analysis and conclusions at Steps Four and Five were flawed. Regarding the Step Five argument, Plaintiff contends that the ALJ's hypothetical questions to the VE were incomplete because they were based on an RFC that failed to incorporate all of Plaintiff's physical limitations, particularly her mental limitations and limitations related to her right hand. The Court previously determined that the ALJ did not err by assessing Plaintiff's RFC, therefore this argument is not persuasive.

Plaintiff also contends that the ALJ erred by failing to ask the VE whether his testimony conflicted with the DOT at Step Five, as required by SSR 00-4p. However, if the DOT's descriptions of the jobs that the VE discussed do not conflict with the hypothetical limitations given by the ALJ, then the ALJ's failure to ask the VE about inconsistencies is harmless error. *See Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008). Here, Plaintiff contends that the jobs are inconsistent with Plaintiff's abilities because they all require light work and frequent handling. (#12, p. 16-17; #16, p. 5.) However, as noted above, the ALJ properly determined Plaintiff's RFC, which limited Plaintiff to light work and did not include handling limitations. Thus, this argument fails.

The Court need not consider whether the ALJ erred at Step Four. Any error the ALJ may have committed at Step Four is harmless because, as explained above, the ALJ performed a proper analysis at Step Five. *See Keys v. Barnhart*, 347 F.3d 990, 994-95 (7th Cir. 2003) (applying harmless error review to ALJ's determination).

## IV.  Summary

For the reasons set forth above, this Court **DENIES** Plaintiff's Motion for Summary Judgment or Remand **(#11)**.

ENTER this 18th day of May, 2010.

s/ DAVID G. BERNTHAL
U.S. MAGISTRATE JUDGE
